**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**<u>MCALLEN</u> DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-70023 |
| CARE PRODUCTS, INC., | § | |
| Debtor | § | CHAPTER 11 |

**DEBTOR CARE PRODUCTS, INC.'S**
**COMBINED CHAPTER 11 DISCLOSURE STATEMENT AND**
**SMALL BUSINESS PLAN OF REORGANIZATION**

Care Products, Inc. (the "Debtor" or "Care Products") files this Small Business Plan of Reorganization (the "Plan") and Chapter 11 Disclosure Statement (the "Disclosure Statement"). The Debtor is seeking to repay its debts over time pursuant to the terms of its Plan. As required by the Bankruptcy Code (the "Code"), the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan contains the terms for how each class of claims will be treated under the Plan.

The Court has not yet confirmed the Plan. In other words, the terms of the Plan are not yet binding on anyone. If the Court later confirms the Plan, then the Plan will be binding on the Debtor and all creditors and interest holders in this case.

The Debtor represents that everything in this document is true to the best of its knowledge. However, the information contained herein has not been independently audited.
**<u>READ THIS DOCUMENT CAREFULLY FOR INFORMATION ABOUT THE FOLLOWING:</u>**

• The Debtor and significant events during the bankruptcy case.

• How the Plan proposes to treat claims or equity interests of the type you hold (e.g., what you will receive on your claim or equity interest if the Plan is confirmed).

• Who can vote or object to the Plan.

• What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.

• Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation.

- The effect of confirmation of the Plan.

## l.   Disclaimer

**THE DEBTOR URGES ALL HOLDERS OF CLAIMS AND INTERESTS IN IMPAIRED CLASSES RECEIVING BALLOTS TO ACCEPT ITS DISCLOSURE STATEMENT.**

**THE DISCLOSURE STATEMENT IS DESIGNED TO PROVIDE ADEQUATE INFORMATION TO ENABLE HOLDERS OF CLAIMS AGAINST AN INTEREST IN THE DEBTOR TO MAKE AN INFORMED JUDGMENT ON WHETHER TO ACCEPT OR REJECT THE PLAN. ALL HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN SUMMARY AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, WHICH IS INCLUDED IN THIS DOCUMENT, OTHER EXHIBITS ANNEXED HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THIS COURT BEFORE OR CONCURRENTLY WITH THE FILING OF THIS DISCLOSURE STATEMENT. FURTHERMORE, THE PROJECTED FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN THE SUBJECT OF AN AUDIT. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL CONTINUE TO BE MATERIALLY ACCURATE: OR (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.**

**ALL HOLDERS OF IMPAIRED CLAIMS AND IMPAIRED INTERESTS SHOULD READ AND CONSIDER CAREFULLY THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT AS A WHOLE, INCLUDING THE SECTION ENTITLED "RISK FACTORS" PRIOR TO VOTING ON THE PLAN. IN MAKING A DECISION TO ACCEPT OR REJECT THE PLAN, EACH HOLDER OF A CLAIM OR INTEREST MUST RELY ON ITS OWN EXAMINATION OF THE DEBTOR AS DESCRIBED IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, INCLUDING THE MERITS AND RISKS INVOLVED. IN ADDITION, CONFIRMATION AND CONSUMMATION OF THE PLAN IS SUBJECT TO CONDITIONS PRECEDENT THAT COULD LEAD TO DELAYS IN CONSUMMATION OF THE PLAN. THERE CAN BE NO ASSURANCE THAT EACH OF THESE CONDITIONS WILL BE SATISFIED OR WAIVED OR THAT THE PLAN WILL BE CONSUMMATED. EVEN AFTER THE EFFECTIVE DATE, DISTRIBUTIONS UNDER THE PLAN MAY BE SUBJECT TO THE SUBSTANTIAL DELAYS FOR HOLDERS OF CLAIMS AND INTERESTS THAT ARE DISPUTED.**

**THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL AS CONTAINING ADEQUATE INFORMATION OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE HOLDERS OF THE CLAIMS AND INTERESTS TO MAKE AN INFORMED JUDGMENT WITH RESPECT TO VOTING TO ACCEPT OR REJECT THIS PLAN. HOWEVER, THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT**

CONSTITUTE A RECOMMENDATION OR DETERMINATION BY THE BANKRUPTCY COURT WITH RESPECT TO THE MERITS OF THE PLAN.

NO PARTY IS AUTHORIZED BY THE DEBTOR TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION WITH RESPECT TO THE PLAN OR REORGANIZATION SECURITIES OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS OR INFORMATION CONCERNING THE DEBTOR, THE DEBTOR'S FUTURE BUSINESS OPERATIONS OR THE VALUE OF DEBTOR'S PROPERTIES HAVE BEEN AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH HEREIN. ANY INFORMATION OR REPRESENTATIONS GIVEN TO OBTAIN YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE DIFFERENT FROM OR INCONSISTENT WITH THE INFORMATION OR REPRESENTATIONS CONTAINED HEREIN AND IN THE PLAN SHOULD NOT BE RELIED UPON BY ANY HOLDERS OF CLAIMS AND INTEREST IN VOTING ON THE PLAN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NONBANKRUPTCY LAW. ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, INTEREST IN OR SECURITIES OF, THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT HAS BEEN PREPARED.

UNTIL THE EFFECTIVE DATE, WITH RESPECT TO THE CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED ACTIONS (WHETHER OR NOT PENDING), THIS DISCLOSURE STATEMENT AND THE INFORMATION CONTAINED HEREIN SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION BY ANY ENTITY, BUT RATHER AS STATEMENTS MADE IN SETTLEMENT NEGOTIATIONS GOVERNED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER RULE OR STATUTE OF SIMILAR IMPORT.

THE DISCLOSURE STATEMENT SHALL NEITHER BE ADMISSIBLE IN ANY PROCEEDING INVOLVING A DEBTOR OR ANY OTHER PARTY NOR BE CONSTRUED TO BE PROVIDING ANY LEGAL BUSINESS, FINANCIAL OR TAX ADVICE. EACH HOLDER OF A CLAIM OR INTEREST SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARY THEREOF IN THIS DISCLOSURE STATEMENT.

## II. The Disclosure Statement and the Confirmation and Requirements for Voting Confirmation Of the Debtor's Plan of Reorganization
### A. The Purpose of the Disclosure Statement

The Bankruptcy Code (Title 11 U.S.C. §101 et seq.) requires that "adequate information" be furnished all Creditors or parties in interest, consisting of a full and adequate disclosure by the Debtor in Possession or its historical, current, and anticipated future financial and business affairs, so that Creditors and other parties in interest can make an informed decision concerning any vote they may cast either in favor or, in opposition to, any proposed Plan. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of such claims in this case, to make an informed judgment in exercising his/her or its right to either accept or reject the Plan. A copy of the Plan is being provided with this Disclosure Statement.

**THIS OBJECTION PROCESS IS A PRE-CONDITION TO YOUR RELIANCE ON THIS DISCLOSURE STATEMENT.**

THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED TO THE BANKRUPTCY COURT FOR APPROVAL AS CONTAINING "ADEQUATE INFORMATION" AS REQUIRED UNDER THE BANKRUPTCY CODE. SUCH APPROVAL IS REQUIRED BY STATUTE AND DOES NOT CONSTITUTE A JUDGEMENT BY THE COURT AS TO THE DESIRABILITY OF THE PLAN OR AS TO THE VALUE OR SUITABILITY OF ANY CONSIDERATION OFFERED THEREBY. THE FINAL APPROVAL OF THIS DISCLOSURE STATEMENT WILL BE GRANTED BY THE BANKRUPTCY COURT ONLY AFTER (i) YOU HAVE RECEIVED NOTICE OF ITS FILING AND HAVE BEEN GIVEN AN OPPORTUNITY TO BE HEARD, AND (ii) YOU DO NOT OBJECT ON THE BASIS OF ABSENCE OF "ADEQUATE INFORMATION" AND SUSTAIN YOUR OBJECTION AT THE DISCLOSURE STATEMENT HEARING.

IF YOU FAIL TO OBJECT AFTER NOTICE, YOU MAY BE FOREVER BARRED OR ESTOPPED FROM COMPLAINING OF THE CONTENTS OR LACK OF CONTENTS OF THIS DISCLOSURE STATEMENT.

YOU ARE SPECIFICALLY REFERRED TO THE TERMS AND CONDITIONS OF THE PLAN AS FILED AND YOU ARE CAUTIONED THAT THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON AS A SUBSTITUTE FOR A CAREFUL REVIEW AND ANALYSIS OF THE PLAN AND OF ALL SUPPLEMENTS AND AMENDMENTS WHICH MAY BE ALLOWED AND APPROVED. THE PLAN MAY BE AMENDED AND SUPPLEMENTED AFTER THIS DISCLOSURE STATEMENT IS FURNISHED TO YOU, UNDER CERTAIN CRITERIA SET FORTH IN THE BANKRUPTCY CODE AND PLAN.

### B. Source of Information For the Disclosure Statement

The Debtor has supplied the information in this Disclosure Statement and has made the estimation of values contained in this Disclosure Statement based on information obtained from several sources. No independent estimate of value has been made. The financial information is believed to be materially accurate and properly presented for the intended use: However, the accounting information is not now the subject of and has never been the subject of, an audit by any certified public accountant or any

governmental agency. Although the Debtor believes that the information contained in all financial records is reasonably and materially accurate, the Debtor does not warrant its accuracy.

## III. The Plan Confirmation Process

To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Code. These include the requirements that: (i) the Plan must be proposed in good faith; (ii) at least one impaired class of claims must accept the plan, without counting votes of insiders; (iii) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (iv) the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

Under the Bankruptcy Code, the following steps must be taken to confirm a Chapter 11 Plan of Reorganization.

### A. Solicitation of Plan

If the Court approves Debtor's Disclosure Statement, as contained herein, Debtor will forward to its creditors and other parties-in-interest the Disclosure Statement and Plan together with the Court's Order Approving Disclosure Statement, Giving Notice of Confirmation Hearing, Setting Certain Deadlines and Providing for Other Matters Concerning Confirmation of the Plan (the "Order"). The Order will schedule the hearing on the confirmation of the Plan and provide dates by which creditors, or any party-in-interest, may file an objection to the confirmation of the Plan.

### B. The Confirmation Hearing and Objections to the Plan

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the plan, at which any party-in-interest may object to confirmation of the Plan.

 The date and time of the hearing on confirmation of the Plan will be set forth in a notice to each Creditor. The hearing may be adjourned from time to time by the Bankruptcy Court without  further notice except for an announcement made at the hearing or any adjournment thereof.  Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served upon Debtor's counsel at the address listed below, together with the proof of service, on or before the date set by the Bankruptcy Court:
JS Whitworth Law Firm, PLLC
Attn: Jana Smith Whitworth
P.O. Box 2831
McAllen, TX 78502

jana@jswhitworthlaw.com
(956) 371-1933 - Telephone
(956) 265-1753 - Fax

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

UNLESS OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

### C.  Requirements for Confirmation of the Plan

At the hearing on confirmation of the Plan, the Bankruptcy Court shall determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event, the Bankruptcy Court shall enter an order confirming the Plan.  To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Code.  These include the requirements that: (i) the Plan must be proposed in food faith; (ii) at least one impaired class of claims must accept the Plan, without counting votes of insiders; (iii) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (iv) the Plan must be feasible.  These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

The Debtor believes the Plan satisfied all of the statutory requirements of  Chapter 11 of Title 11, United States Code, that the Debtor has complied or will have complied with all of the requirements of the Chapter 11 and that the proposal of the Plan is made in good faith.

### D.  Voting Rights and Requirements

If the Court approves this Disclosure Statement, each Creditor entitled to vote on the Plan will be provided with a ballot to be used for voting to accept or reject the Plan, together with a postage paid return envelope.

In order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be completed and returned to the Bankruptcy Court prior to the hearing before the Bankruptcy Court requiring its approval of the Plan or at such other time as the Bankruptcy Court may set.  The time and date of the hearing will be set forth in a notice to the Creditors.

Whether or not the Creditor entitled to vote expects to be present at the hearing, each Creditor is urged to complete, date, sign and properly mail the ballot to the following address:

U. S. BANKRUPTCY COURT CLERK
Southern District of Texas - McAllen Division
United States Courthouse
1701 West Business Highway 83, 10th Floor
McAllen Texas, Texas 78501

With a copy to:

JS Whitworth Law Firm, PLLC
Attn: Jana Smith Whitworth
P.O. Box 2831
McAllen, TX 78502
jana@jswhitworthlaw.com
(956) 371-1933 - Telephone
(956) 265-1753 - Fax

Any Creditor whose claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor (and such claim is not scheduled as disputed, contingent or unliquidated), or (ii) it has filed a proof of claim on or before the 1st date set by the Bankruptcy Court for such filings. Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allowed the claim in an amount which it deems proper for the purpose of accepting or rejected the Plan upon application by the Creditor. Such application must be heard and determined by the Bankruptcy Court at such time as specified by the Bankruptcy Court. A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Under Section 1124 of the Bankruptcy Code, a class of Claims or Equity Security interests is impaired under a Chapter 11 plan unless, with respect to each Claim or interest of such class, the Plan:
1.      Leaves unaltered the legal, equitable, contractual rights of the holder of such Claim or Equity Security interest; or
2.      Notwithstanding any contractual provision applicable law that entitles the holder of a Claim or Equity Security interest to receive accelerated payment of his Claim or Equity Security interests after the occurrence of a default:
        a.      Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default that consists of a breach of any provision relating to the insolvency or financial condition of the Debtor at any time before the closing of the case, the commencement of a case under the Bankruptcy Code, or the appointment of or taking possession by a trustee in a case under the Bankruptcy Code;
        b.      Reinstates the maturity of such Claim or Equity Security interest as it existed before the default;

c.       Compensates the holder of such claim or Equity Security interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

d.       Does not otherwise alter the legal, equitable, or contractual rights to which such Claim or Equity Security interest entitles the holder of such claim or Equity Security interest; or

e.       Provides that, on the Plan Effective Date, the holder of such Claim or Equity Security interest, received, on account of such Claim or Equity Security interest, cash equal to:

(i)      With respect to a Claim, the allowed amount of such Claim; or

(ii)     With respect to an Equity Security interest, if applicable, the greater of:

(A)      Any applicable fixed liquidation preference; or

(B)      Any fixed price at which the Debtor, under the terms of the security, may redeem the security.

Under the Debtor's Plan, all Classes are impaired except Classes 1 and 2.

The Bankruptcy Code defines acceptance of a Plan by a class of Creditors or Equity Security interest holders as acceptance by holders of two-thirds (2/3) in dollar amount and a majority in number of the Claims or Equity Security interests of that class which actually cast ballots for acceptance or rejection of the Plan; i.e., acceptance takes place only if sixty-six and two thirds percent (66-2/3%) in amount of Claims and Equity Security interests in each class and more than fifty percent (50%) of Claims or Equity Security interests voting in each class cast their ballots in favor of acceptance.

The Classification of any manner of satisfying all Claims under the Plan take into consideration the fact that the Debtor may be joining obligor with another Person or Persons with respect to the same obligation. All Claims against the Debtor based upon any such guarantees or joint obligations shall be discharged in the manner provided in the Plan.

### E. Confirmation Hearing
### (The Court May Approve This Plan and Limit Creditors' Legal Rights)

The Court will consider only written objections and ballots that are timely filed.  If no objections are filed (or if all objections are overruled by the Court) and if at least one class of creditors will be bound, even if a Creditor did not vote and even if a Creditor voted against the Plan.  This means that the Creditor will not be allowed to collect its claim against Debtor, except as provided in this Plan.

### F. Cramdown and Absolute Priority Rule

In the event that any impaired class of claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan, "does not discriminate unfairly" and "is fair and equitable".  A Plan of reorganization does not

discriminate unfairly within the meaning of the Bankruptcy Code if no class received more than it is legally  entitled to receive for its claims or Equity Security interest.  "Fair and Equitable" has different meanings for secured claims and unsecured claims.

With respect to a secured claim, fair and equitable means either (1) the impaired secured creditor retains its liens to the extent of its allowed claims and received deferred cash payments at least equal to the allowed amount of its claims and received deferred cash payments at least equal to the value of such Secured Creditor's interest in the property securing its liens, or (2) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of the sale, and such lien proceeds must be treated in accordance with clause (1) and (3) hereof; or (3) the impaired secured creditor realizes the "indubitable" equivalent of its claim under the Plan.

In the event one or more classes of impaired claims rejects the Plan, the Bankruptcy Court will determine at the hearing for confirmation of the Plan whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of claims.  If the Bankruptcy Court determines that the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of claims, the Bankruptcy Court may confirm the Plan over the objections of any impaired class.

The balance of this section only applies if a class of unsecured claims does not accept the Plan.  In that instance, Debtor seeks confirmation of the Plan pursuant to 11 U.S.C. §1129(b).

### IV.  Summary of the Debtor's Operations and Bankruptcy Estate

### A. Background

Debtor was formed as a Texas corporation on April 27, 1987, by filing its Articles of Incorporation with the Texas Secretary of State.  Debtor was formed for the purpose of manufacturing medical furniture and equipment using plastics and PVC piping.  Debtor's manufacturing facilities consist of an office and two (2) warehouses located on a 1.46 acre tract at 10701 North Ware Road, McAllen, Hidalgo County, Texas (the "Property").  The sole shareholder and 100% owner is Charlie L. Graham ("Mr. Graham").  The Property is located on the acreage behind Mr. Graham's residence (which faces North Ware Road).

Due to the decline in Mr. Graham's health, Debtor ceased operations in late 2018.  At the time this case was filed, Debtor was leasing the Property, and the manufacturing equipment, to another medical furniture manufacturer (the "Tenant") for the monthly rent of $7,000.00.  The Tenant holds an option to purchase the Property for the sales price of $740,000.00 and an accompanying right of first refusal in the event Debtor is able to secure another purchaser.

Debtor filed a voluntary petition on January 23, 2019, that commenced this chapter 11 bankruptcy case. The filing of the Petition constituted an order for bankruptcy relief under §301 of the Code.  Upon the filing of the case, an automatic stay was imposed pursuant to §362(a) of the Code.  The automatic stay prohibits most collection activities against the Debtor and its property.  There are certain exceptions set forth in §362(b) of the Code.

The meeting of creditors under §341(a) of the Code was held on February 28, 2019.  The meeting took place as scheduled and was concluded on that date.  Debtor's representative, Charles L. Graham, attended and participated in the meeting of creditors.

### B.   Description of Debtor's Assets

The Debtor filed schedules of all of its assets and liabilities on January 23, 2019.  Complete copies of the schedules are available from the Clerk of the Court.  The primary assets of the bankruptcy estate, their estimated values and associated liens are:

| DESCRIPTION AND CATEGORY OF ASSETS | FAIR MARKET VALUE | AMOUNT SECURED  LIENS (excluding property taxes) | VALUE FOR ESTATE |
|---|---|---|---|
| **Real Property (Manufacturing Facility)** | $700,000.00 | $478,000.00 | **$222,000.00** |
| **Office Furniture & Office  Equipment** | $11,110.00 | | $11,110.00 |
| **Machinery,  Equipment & Tools of the Trade** | $27,930.00 | | $27,930.00 |
| **Accounts Receivables (average)** | $0.00 | | |
| **Cash** | $25,000.00 | | $25,000.00 |
| **TOTAL VALUE OF ASSETS:** | **$764,040.00** | | **$286,040.00** |
| **Total IRS  Unsecured Debt** | | | **$1,074.00** |
| **Total 2019 Ad Valorem Taxes** | | | **$8,920.59** |
| **Total Value after payment to IRS & Hidalgo County** | | | **$276,045.41** |

### C.  Pending Claims/Litigation Owned by Debtor

When the Debtor filed this bankruptcy case, all of its property became property of its bankruptcy estate. There was one collection lawsuit against Debtor on file at the time this case was filed and is described below:

| Case Name | Cause Number Court/Jurisdiction | Date Filed Amount Claimed | Nature of Lawsuit |
|---|---|---|---|
| QuarterSpot, Inc. v. Care Products, Inc. and Charles Graham | CL-18-3642 Virginia: Arlington Circuit Court, Arlington, VA | Filed 12/18/2018 $95,000.00 demanded | Collection lawsuit |

At the time of filing this Disclosure Statement and Plan, the Debtor is not involved in any other litigation matters.

## D. Events Leading Up to Bankruptcy

Debtor was formed as a Texas corporation on April 27, 1987, by filing its Articles of Incorporation with the Texas Secretary of State. Debtor was formed for the purpose of manufacturing medical furniture and equipment using plastics and PVC piping. Debtor's manufacturing facilities consist of an office and two (2) warehouses located on a 1.46 acre tract at 10701 North Ware Road, McAllen, Hidalgo County, Texas (the "Property"). The sole shareholder and 100% owner is Charlie L. Graham ("Mr. Graham"). The Property is located on the acreage behind Mr. Graham's residence (which faces North Ware Road).

Due to the decline in Mr. Graham's health, Debtor ceased operations in late 2018. At the time this case was filed, Debtor was leasing the Property, and the manufacturing equipment, to another medical furniture manufacturer (the "Tenant") for the monthly rent of $7,000.00. The Tenant holds an option to purchase the Property for the sales price of $740,000.00 and an accompanying right of first refusal in the event Debtor is able to secure another purchaser.

Debtor filed a voluntary petition on January 23, 2019, because the debts owed to the main secured creditor, Rio Bank, was coming due and Debtor needed time to sell the
Debtor believes that it can generate sufficient income to reorganize by restructuring its debt so that it can afford to pay off all of its creditors.

## E. Operations in Bankruptcy

Debtor has continued to operate as a debtor-in-possession. Debtor has retained and intends to retain its shareholder: Charles L. Graham (100% ownership). This shareholder will be retained because of his collective experience, contacts, and proven record of commitment of substantial time and resources to the business. Debtor has complied with its duties as debtor-in-possession.

## F. Significant Events and Orders Entered During the Bankruptcy Case

The following significant events occurred and orders were entered during the bankruptcy case:

- On January 25, 2019, the Court entered the Order for Chapter 11 Status Conference [Doc. 14] scheduling the status conference for February 1, 2019.
- On February 1, 2019, the Court held a Status Conference and entered its Chapter 11 Status Conference Order [Doc. 30].
- On February 1, 2019, the Court entered its Order Approving Jana Smith Whitworth of JS Whitworth Law Firm, PLLC, as Attorney for Debtor-in-Possession [Doc. 31].

- On February 1, 2019, the Court entered its Order Authorizing Assumption of Unexpired Real Property Lease [Doc. 32]
- On February 1, 2019, the Court entered its Order Authorizing Employment of Real Estate Broker and Approving Debtor's Assumption of (i) Unexpired Commercial Lease Addendum for Broker's Fee, and (ii) Unexpired Commercial Real Estate Listing Agreement [Doc. 33].
- On February 12, 2019, the Court entered its Agreed Order Authorizing Interim Use of Cash Collateral and Setting Hearing [Doc. 43].
- On February 25, 2019, the Court entered its Order Approving Debtor's First Interim Application for Compensation and Reimbursement of Expenses of Jana Smith Whitworth of JS Whitworth Law Firm, PLLC, in the amount of $9,450.00 in fees and $1,755.35 in expenses [Doc. 45].
- On March 6, 2019, the Court entered its Order Authorizing the Retention and Compensation of Accounting Professional, Roger Barker, CPA, of Smith Fankhauser Voigt & Watson, PLLC, Utilized in the Ordinary Course of Business, Effective from the Petition Date [Doc. 47].
- On March 20, 2019, the Court entered its First Amended Agreed Order Authorizing Interim Use of Cash Collateral and Setting Hearing [Doc. 53].
- On April 8, 2019, the Court entered its Order Approving Debtor's Second Interim Application for Compensation and Reimbursement of Expenses of Jana Smith Whitworth of JS Whitworth Law Firm, PLLC. in the amount of $3,810.00 in fees [Doc. 55].
- On May 8, 2019, creditor Rio Bank filed its Motion for Relief From Stay Against Real Property [Doc. 58].
- On May 23, 2019, Debtor filed its Response to Rio Bank's Motion for Relief From Stay Against Real Property [Doc. 59].
- No adversary proceedings have been filed.

### G.  Preferential or Other Avoidable Transfers

Debtor does not believe there are preferential or avoidable transfers.

### H.  Sources of Income for Purposes of the Plan

The Debtor's sole source of income is the $7,000.00 monthly rental payments.   The current monthly income is described as follows:

| Description of  Source of Income | Average Monthly Gross Income | |
|---|---:|---:|
| Monthly Rent | $7,000.00 | |
| Monthly Expenses (insurance/taxes/life insurance) | $2.155.00 | |
| **Average Monthly Net Profit** | | **$4,845.00** |
| **Projected Monthly Plan Payment:** | | **$4,807.50** |
| **Overage After Projected Plan Payment:** | | **$37.50** |

## V.  General Description of Reorganization

The Plan provides for the implementation of a repayment plan from the income generated from commercial lease, and sale, of the Debtor's manufacturing facility.  Specifically, Debtor intends to pay its creditors over a 5-year period. The largest creditor is Rio Bank who will be paid over a 5-year period with a balloon payment due at the sale of the manufacturing facility or on month 60, whichever occurs first. Debtor will pay the IRS in full over a 2-year term.  Debtor will pay a 10% dividend to non-priority unsecured creditors upon the sale of the manufacturing facility. Debtor's shareholder will retain ownership of Debtor, post-confirmation.

## VI.  Definitions of Terms Used in Disclosure Statement and Plan

For the purpose of the Disclosure Statement and Plan, the following definitions shall apply:

**Administrative Claim:** means any cost, claim or expense of administration in the Chapter 11 case which has been allowed and entitled to priority in accordance with the provisions of § 330, § 503(b) and § 507(a) of the Code, including, any actual and necessary expenses of preserving the Debtor's estate including, without limitation, all fees and expensed to the extent allowed by the Court under § 330, § 503(b) under Chapter 123 of Title 28, United States Code, to the extent incurred by the Debtor, during the case and after confirmation regarding Claims Allowance, avoidance actions, or the like (whether or not Allowed).

**Allowance Date:** means the date an order of the Court Allowing a Claim in the Case has become a Final Order and non appealable and no appeal therefore is pending.

**Allowed Claim:** shall be any Claim against the Debtor, provided: (a) proof shall be in the form of a Proof of Claim which was timely and properly filed or, if no proof of Claim was filed, which has been listed by the Debtor on the Schedules as liquidated in amount and not disputed or contingent and (b) in either case, a Claim as to which no objection to the Allowance thereof has been interposed on or before the applicable applicable period of limitation fixed by the Plan, the Code, the Rules of the Court, or order of the Court; or as to which any objection is determined in favor of a claimant, and whether or not Allowed by an order of the Court, to the extent incurred by the Debtor and not paid from sources other than Property of the Estate. Unless otherwise specified herein or by order of the Court, "Allowed Claim" shall not include any informal claim, nor interest on any Plan. Unless a claim is an Allowed Claim, such Claim shall not be entitled to participate in any distribution under the Plan, and failure of any Claimant to take the necessary action to secure Allowance shall bar the existence of any liability of the Debtor or parties Discharged to that Claimant, and Claimant rights, if any, shall be Discharged by the confirmation of this Plan as provided by the Plan, applicable law and Bankruptcy code.

**Allowed Secured Claim:** means an Allowed Claim arising on or before the petition date that is secured by a valid and perfected lien upon Property of the Estate; excluding property subject to avoidable transfers which shall be deemed not an Allowed Secured Claim or an Allowed Claim for which the Debtor asserts a set off under Section 553 of the Code; to the extent of the value (which is set forth in the Schedules or if objection is made timely to value, either agreed by the Debtor pursuant to the Plan, in writing, or in the absence of an agreement, has been determined in accordance with Section 506(a) or §1111(b) of the Code at or prior to Confirmation Date) of the interest of the holder of such Allowed Claim in Property of the Estate. That portion of any such Secured Claim exceeding the value of security held therefore shall be a Deficiency Claim unless expressly modified by the Plan.

**Avoidance Action:** shall mean a cause of action assertable by the Debtor or its successors pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

**Bankruptcy Code:** means the Bankruptcy Code of 1978 as contained in Title 11, U.S.C. § 101 et seq. and the amendments thereto. All references to any statute in this plan are references to the Bankruptcy Code as defined therein.

**Bar Date:** means the deadline for filing proofs of claims against the Debtor or any other date established pursuant to an Order of the Court with respect to any other creditor; or, with respect to any allowed Administrative Claim or Claim arising with respect to rejection of an executory contract, such other date as this Plan, the Court of the Bankruptcy Code may establish pursuant to the Plan (or other Order) and after which any proof of Claim files will not be Allowed, and the later filing of which will have no effect on the distributions provided in this Plan or effect the discharge or re-judicata effect of any discharge or injunction provided in the Plan. No informal filing or other document shall constitute a Proof of Claim except as provided in this Plan.

**Claim:** shall mean

1. any "right to payment" either directly from the Debtor or Debtor in Possession or indirectly as a result of the Debtor's liability to third parties arising out of contract (e.g. a joint guaranty), tort (e.g. subordination), legal tort (e.g. equitable claim) or arising in any respect as a tax, tax penalty or interest or charge or imposition by a Governmental Unit resulting from a pecuniary or non-pecuniary loss by any Governmental Unit, that arose on or before the confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, contested, uncontested, legal equitable, secured, or Unsecured.
2. or any right under § 502(h)
3. or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, contested, uncontested, secured, or Unsecured;
4. or any right to a remedy in equity of at law arising out of violation of any rule or regulation of a Governmental Unit and any and all priority claims of every nature; and
5. or any right to look to the community property made property of the estate by 11 U.S.C. § 541 and the marriage of the Debtor to his non-filing spouse.

**Class or Classes:** means the particular Class designated in this Plan pursuant to Bankruptcy Code Sections 1122 and 1129 and in which Creditors' Claims may be included as provided in this Plan.

**Chapter 11 Case:** means the Chapter 11 case now pending in the United States Bankruptcy Court for the Southern District of Texas, CARE PRODUCTS, INC., filed in the U.S. Bankruptcy Court, Southern District of Texas, McAllen Division, having been commenced pursuant to 11 U.S.C. § 101, et seq.

**Confirmation Order:** means the signing and entry of the Order Confirming Plan entered pursuant to U.S.C. § 1129, and is deemed to include in the Plan all provisions of such Order or any subsequent Amended Order confirming the Plan, any authorized Modifications and providing for the continued operations of the Debtor and approval of this Plan.

**Confirmation Date:** shall mean the date set by the Court pursuant to 11 U.S.C. §1128 for the hearing on Confirmation of the Plan.

**Contested:** when used with respect to a Claim, shall mean a Claim against the Debtor (i) that is listed in the Debtor's schedule of liabilities as disputed, contingent, or unliquidated;  (ii) that is listed in the Debtor's schedule of liabilities as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of claim exceeds the scheduled amount;  (iii) that is not listed in the Debtor's schedule of debts, but as to which a proof of claim has been filed with the Bankruptcy court: or (iv) as to which an objection has been filed.

**Court:**   shall mean The United States Bankruptcy Court for the Southern District of Texas, McAllen Division, acting in this case.

**Creditor or Claimant**:   shall mean any entity that has a claim against the Debtor that arose at the time of or before the filing of the petition in this case as defined in § 101(4) of the Bankruptcy Code.

**Debt:** shall mean any liability on a Claim held by any Person, Claimant or Subordinate Unsecured Claimant.

**Debtor:**   shall mean CARE PRODUCTS, INC.

**Deficiency Claim**: means Unsecured Claims remaining after deducting the full value of the collateral of the Secured Claimant.

**Discharge:** means the release, satisfaction and full and final settlement of a Claim on any Debt as specifically provided in this Plan with respect to the Discharged party.

**Distributions Under the Plan:** means except as otherwise provided herein or as ordered by the Bankruptcy Court, Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the first day of the month following one full month after the Effective Date, provided however, that should such Allowed Claims be paid in the ordinary course of business, the distribution date shall be such date the Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law.

**Effective Date:** shall mean the fifteenth (15th) day following the day of the entry of the Order confirming plan.

**Estate Assets or Property of the Estate:** shall mean the estate created by 11 U.S.C. § 541 on the commencement of the Chapter 11 Case consisting of all property owned by the Debtor upon the date of the filing of the Chapter 11 Case, including personal and real property, all accounts and accounts receivable, and the right to recover any Debt from any third party or Creditor, and the income or proceeds of Property of the Estate.

**Final Decree**:   means the last order of the Court entered in accordance with Bankruptcy Rule 3022 pursuant to 11 U.S.C. § 350.

**Final Order or Final Judgment:** shall mean an order of the Court which, not having been appealed, reversed, modified or amended and not having been stayed or the time to appeal from which or to seek

review or rehearing of which having expired, has become conclusive of all matters adjudicated thereby and is in full force and effect.

**Governmental Unit:** shall mean "governmental unit" as defined in 11 U.S.C. § 101 and shall include any taxing unit and any administrative agency of any such Governmental Unit.

**Objection**: shall mean a contested matter, adversary proceeding, or any counterclaim or cross-action in any adversary proceeding initiated for the purpose of objecting to any Claim of a Creditor and shall include any action brought by a Creditor or removed to the Court after Confirmation of this Plan which deals with any Claims treated in, or arising under, or released or Discharged under this Plan or which may affect the administration of this Plan.

**Payment in Full and Paid in Full:** means the receipt by or for the account of a Creditor of consideration the value of which equals the amount of its Allowed Claim or the amount provided in this Plan for payment to such holder of the Allowed Claim.

**Person**: means an individual, corporation, limited liability company, partnership, joint venture, trust, estate, unincorporated organization, or a Governmental Unit or any agency or political subdivision thereof.

**Petition Date**: means January 23, 2019, the date the Voluntary Petition was filed by the Debtor.

**Plan:** means this Plan of Reorganization is subject to confirmation by voluntary petition under Chapter 11 of the Bankruptcy Code and now pending in this Court.

**Proof of Claim**: shall mean the official form provided for the written filing proofs of a Debt or Claim providing for the inclusion of documentary evidence or written explanation which has been substantially completed and timely filed unless filing is not required by this Plan or the Bankruptcy Code (regarding undisputed and liquidated Claims scheduled as such) and which timely filed Proof of Claim has been signed under the penalty of perjury as provided in such official form.

**Priority Tax Claim**: means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in Sections 502(j) and 507 (a)(8) of the Bankruptcy Code.

**Pro Rata Share:** means the amount which is the result of multiplying the net proceeds or dividend available for distribution at any given time to a Class of Claimants by that fraction in which the numerator is the Allowed amount of the claim of the particular Creditor of the names Class and the denominator is the total of the Allowed amounts of all the Creditors' Allowed Claims of such Class.

**Property of The Estate:** shall mean the estate created by 11 U.S.C. § 541 on the commencement of the Chapter 11 case consisting of all property owned by the Debtor upon the date of filing of the chapter 11 case.

**Professional Fees:** means those Allowed Claims for reasonable and necessary professional fees which are Allowed pursuant to this Plan and/or the 11 U.S.C. § 330, 503(b)(D) and entitled to priority status as administrative expenses pursuant to 11 U.S.C. §507(a)(1).

**Rule(s) or Rules of the Court:** means the rules of procedure in bankruptcy cases applicable to cases pending before the Court, and if made applicable, as amended from time to time, including Rules in effect, if any, regarding Chapter 11 cases.

**Schedules or Schedule:** means the Schedules and Statement of Financial Affairs filed in this Bankruptcy case by the Debtor, including the list of assets, Creditors, Exempt Property, and including any amendments and/or supplements thereto up to and including the Confirmation Date.

**Settled Claim or Settlement with respect to a Claim:** means a claim that is no longer contested or, whether or not an Allowed Claim, is the subject of a compromise between the Debtor and the respective creditor regarding payment and additional payments from other than Property of the Estate.

**Secured Creditor:** means a creditor holding an Allowed Secured Claim, and may include any valid and enforceable Judgment Lien released herein.  Including but not limited to: statutory liens, other involuntary liens or mortgages, and voluntary liens.

**Subordinated Creditors:** means Creditors whose Claims are subordinated: (i) in accordance with 11 U.S.C. § 510 or §1129(b) by Final Order; or (ii) pursuant to this Plan.

**Substantial Consummation:**

(a) All or substantially all of the property proposed by the Plan to be transferred has been transferred;

(b) the Debtor or any successor to the Debtor under the plan has assumed operation of the Debtor's business or assumed possession of all or substantially all of the property dealt with by the plan; and

(c) distributions under the Plan have commenced.

**Termination Date:** means the day on which all payments due under this Plan have been made, whether such payments are prior to or subsequent to a Declared Default under this Plan, or seventy two (72) months after the Effective Date, whichever first occurs.

**Unsecured Claim**: shall mean a Claim or the part of a claim which is not secured by a lien, security interest or other charge against or interest in Property of the Estate in which Debtor has an interest and shall include a Claim arising out of the rejection of any executory contract under 11 U.S.C. § 365 and deficiency claim, administrative claim or any claim asserted by an affiliate or insider to the Debtor, and excluding any interest, attorney's fees, costs of collection or the like not earned and due on the Petition Date and, with respect to distributions, only to the extent constituting and Allowed Unsecured Claim under this Plan.

A term used in this Disclosure Statement and Plan, not otherwise defined herein but used in the Code, shall have the definition assigned to such term in the Code.

### VII. Debtor's Plan for Payment of its Debts

### A.  Summary of Plan of Reorganization

Debtor intends to pay all allowed claims, as provided herein, within the time frame listed for each class of creditor. However, Debtor hereby reserves the right to pay earlier without any penalty or fee.  The confirmation date shall be the date upon which the Order of Confirmation is entered by the Court.  The Effective Date of the Plan shall be fifteen (15) days following the Confirmation Date.

### B.  Classification and Treatment of Classes under the Plan

**Administrative Claims**
Administrative Claims are those arising under 11 U.S.C. § 507(a)(2). Unless otherwise agreed by the holders of these Claims, these Claims will be paid in cash, in full, on or before the Effective Date, or when such Claims become Allowed Claims. ALL ADMINISTRATIVE CLAIMS (other than the US Trustee) WILL BE REQUIRED TO FILE AN ADMINISTRATIVE CLAIM PRIOR TO THE ADMINISTRATIVE BAR DATE. Administrative Claims are comprised of the following categories of Claims:

Class 1:   U.S.Trustee Fees: All allowed claims as allowed pursuant to 11 U.S.C. § 503.

Treatment:    Any outstanding Trustee's Fees shall be paid on the effective date of the plan.

Class 2:   Attorney/Professional Fees: First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under Chapter 123 of Title 28.  All allowed Administrative Claims, as that term is defined herein and in 11 U.S.C. §507 (a)(1), including fees for services rendered and expenses incurred by Court-approved counsel for the Debtor or other Professionals employed by the Debtor, and any expenses provided for under 28 U.S.C. §1930.

These claims are:

1. Attorney fees and costs: JS Whitworth Law Firm, PLLC - Professional employed by Debtor for services rendered and expenses incurred. These payments will be made pursuant to the Court's approval of the fee applications filed by Debtor's attorney.
2. There are no other administrative claims.

All other holders of Administrative Claims, including Governmental Units (except the U.S. Trustee) not covered under any other section, shall be required to file a proof of claim for allowance and payment of an Administrative Claim no later than the Administrative Claims Bar Date.

Objections to timely filed applications of Professionals for compensation or reimbursement of expenses and/or other Administrative Expense Claim must be filed and served no later than the sooner of: (i) twenty-one (21) days after the application is filed; or (ii) twenty-one (21) days after the Administrative Claims Bar Date.

Administrative Claims shall be paid in full by the Debtor on the later of: (i) the Effective Date; (ii) fifteen (15) days after the date when such Administrative Claim is Allowed by the Court; or (iii) as agreed by the Administrative Claimant and the Debtor.

<u>Treatment:</u>   All of the professional fees will be paid according to the orders entered by the Bankruptcy Court authorizing such payments. All amounts owed for the administrative costs incurred during the pendency of the bankruptcy case, and approved by the Court, will be paid within 30-days from date of entry of the order confirming the Plan.

<u>Class 3:</u>        The Allowed Secured Claims of each creditor, person or entity, whether or not the holder of a secured claim that is secured by a tax lien and/or security interest in the property of the Debtor which arises from a secured claim as allowed by 11 U.S.C. §506(a) of the Code which is an allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.    This claim is impaired.

The secured ad valorem tax claims in this class total $14,041.59 and consist of:

a.        Hidalgo County [Claim 5] 2018 real property taxes in the amount of $8,920.59; and
b.        Hidalgo County [Claim 5] 2018 personal property taxes in the amount of $5,121.00.

<u>Treatment</u>:      Payment of the $14,041.59 owed for the 2018 taxes shall be made in fifty-four (54) equal monthly installments, commencing thirty (30) days from the Plan's Confirmation Date with a final payment to be paid within fifty-four (54) months from the date of confirmation of the Plan. The Class 3 Claims shall bear interest at the statutory rate of 12% per annum from the date of filing of this case until said taxes are paid in full. The Taxing Entities shall retain all liens until all taxes are paid in full. Specifically, the secured tax claims of Hidalgo County (the "Taxing Entity") of $14,041.59 the shall be paid over a fifty-four month period at 12% per annum interest with fifty-four (54) equal monthly payments of approximately $337.79 each, depending on the amortization schedule performed by the Taxing Entities after confirmation of this Plan.   In the event the real property located at 10701 N. Ware Road, McAllen, Texas (the "Property") is sold prior to the payment of this class of claims through the confirmed Plan, this class of claims will be paid in full with the sales proceeds of the Property at the time of closing.

The 2019 ad valorem taxes are not included in the Plan and shall be paid in the ordinary course of business and said Taxing Entities shall not be required to file a request for allowance and payment of its claim. To the extent any such taxes due to the Taxing Entities for the 2019 tax year are not timely paid as required by state statute, the Taxing Entities shall be at liberty to pursue state court remedies to collect said taxes without further order of the Bankruptcy Court. The statutory liens now securing said claims shall be retained until said taxes are paid in full.

Default shall occur if one monthly installment due to Taxing Entities under the confirmed Plan is not paid by Debtor or if post-confirmation taxes (including 2019 taxes) are not paid timely pursuant to state law. In the event of default in the monthly payments required to be paid to Taxing Entities, the Taxing Entity shall send written notice of default to Debtor's attorney and Debtor. If the default is not cured within twenty (20) days after notice of the default is mailed, the Taxing Entities may proceed with state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code. In the event of a second default, Taxing Entities may proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code. If the event the Debtor fails to timely pay post-petition taxes, Taxing Entities shall be free to proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code without further notice or court order.

 Class 4a:       The secured claim of Rio Bank in the amount of $318,096.89 [Claim 1] based upon a promissory note dated March 18, 2011, in the original principal amount of $520,000.00, and the subsequent renewal and extension agreements (collectively, "Note 1"), secured by: (i) a first lien Deed of Trust and Assignment of Rents dated March 18, 2011 (the "1st DOT"), secured by the 1.46 acre tract (office-2 warehouse manufacturing facility) located at 10701 N. Ware Road, McAllen, Hidalgo County, Texas (the "Property"); and (ii) the UCC Financing Statement filed on June 23, 2017, with the Texas

Secretary of State as Filing Number 17-0021541778 (the "Rio Bank UCC") with a lien on Debtor's accounts receivables and the sale proceeds of any inventory.  This claim is impaired.

Class 4b:       The secured claim of Rio Bank in the amount of $92,267.36 [Claim 2] based upon a revolving line of credit note dated June 17, 2015, in the original principal amount of $100,000.00, and the subsequent renewal and extension agreements (collectively, "Note 2"), secured by: (i) a second lien Deed of Trust (With Security Agreement and Financing Statement) dated June 17, 2015 (the "2nd DOT"), secured by the 1.46 acre tract (office-2 warehouse manufacturing facility) located at 10701 N. Ware Road, McAllen, Hidalgo County, Texas (the "Property"); and (ii) the UCC Financing Statement filed on June 23, 2017, with the Texas Secretary of State as Filing Number 17-0021541778 (the "Rio Bank UCC") with a lien on Debtor's accounts receivables and the sale proceeds of any inventory.  This claim is impaired.

Class 4c:       The secured claim of Rio Bank in the amount of $50,326.97 [Claim 3] based upon a promissory note dated June 22, 2017, in the original principal amount of $50,000.00, and the subsequent renewal and extension agreements (collectively, "Note 3"), secured by: (i) a third lien Deed of Trust and Assignment of Rents dated June 22, 2017 (the "3rd DOT"), secured by the 1.46 acre tract (office-2 warehouse manufacturing facility) located at 10701 N. Ware Road, McAllen, Hidalgo County, Texas (the "Property"); and (ii) the UCC Financing Statement filed on June 23, 2017, with the Texas Secretary of State as Filing Number 17-0021541778 (the "Rio Bank UCC") with a lien on Debtor's accounts receivables and the sale proceeds of any inventory.  This claim is impaired.

Class 4d:       The secured claim of Rio Bank in the amount of $10,005.29 [Claim 4] based on a promissory note dated March 20, 2018, in the original principal amount of $10,000.00 ("Note 4"), secured under the "future loan provisions" of: (i) the 2nd DOT lien on the Property; (ii) the 3rd DOT lien on the Property; and (iii) the Rio Bank UCC lien on Debtor's accounts receivables and the sale proceeds of any inventory.  This claim is impaired.

Treatment:   Debtor shall pay the Class 4 claims, totaling $478,000.00, to Rio Bank by remitting: (i) a payment of $10,005.29 within 45 days of confirmation of this Plan, for the full and final payment of Note 4 [Claim 4]; and (ii) monthly payments of approximately $3,556.38 for 59 months with a balloon payment of approximately $411,817.00 to be paid on month 60 for payment of Note 1 [Claim 1], Note 2 [Claim 2, and Note 3 [Claim 3].   Specifically, the amount owed on Note 1[Claim 1], Note 2 [Claim 2, and Note 3 [Claim 3] shall be paid over a five (5) year period with monthly payments amortized over a 20-year period with the unpaid amount earning interest at 6.5% per annum.

The Class 4 Claims shall be paid as follows:

| Class of Claim | Note | Amount Owed | Plan Payment |
|---|---|---|---|
| 4a | Note 1 | $318,096.89 | Approximately $478,000.00 paid over 5-year balloon: $3,556.38 for 59 months with $411,816.47 balloon payment on month 60 OR the debt is paid in full upon sale of the Property (monthly payments at 6.5% amortized over 20-years) |
| 4b | Note 2 | $92,267.36 | |
| 4c | Note 3 | $50,326.97 | |
| 4d | Note 4 | $10,005.29 | Paid in full within 45 days of confirmation |

Payments shall begin on the Effective Date and shall be due on the 15th of each month, thereafter. Rio Bank's pre-petition lien on the Property is hereby acknowledged without the necessity to file or execute any document as may be required under applicable state law. Debtor is hereby authorized to execute any renewal, modification, or extension documents related to this claim. A default on this claim shall be defined and governed by the loan documents pertaining to this claim, even after confirmation of this Plan. Upon the occurrence of a Final Default (as defined in the Plan provision for this claim), the automatic stay shall immediately be terminated and be lifted without further need of court order.

In the event the Property is sold prior to the payment of this class of claims through the confirmed Plan, this class of claims will be paid in full with the sales proceeds of the Property at the time of closing.

Class 5:      The Unsecured Priority Tax Claim of the Internal Revenue Service [Claim 7] in the amount of $818.06 which consists of unpaid taxes of $818.06 and unpaid interest of $20.48.  This claim is impaired.

Treatment:    Debtor shall pay this $838.54 by remitting monthly payments of  $36.79 for 24 months (2 years) with interest on the unpaid balance accruing at 5% per annum.  These payments shall begin thirty (30) days from the confirmation date.  Should the Debtor be unsuccessful in repaying the Internal Revenue Service this Unsecured Priority Claim of $838.54 in full, pursuant to this Agreement, the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.

Class 6:     The Unsecured Non-Priority Tax Claim of the Internal Revenue Service [Claim 7] in the amount of  $234.67 which consists of penalties and unpaid interest.  This claim is impaired.

<u>Treatment</u>:   Debtor shall pay this $234.67 within 45 days of confirmation. Should the Debtor be unsuccessful in repaying the Internal Revenue Service this Unsecured Nonpriority Claim of $234.67 in full, pursuant to this Agreement, the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.

Payments shall be remitted in the form of check or money order made payable to the U.S. Treasury and mailed to:
Internal Revenue Service
300 East 8th Street, Stop 5026AUS
Austin, Texas 78701

<u>Agreement with the Internal Revenue Service</u>:   The federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case.   The liens continue to be enforceable against the Reorganized Debtor's property to the extent, priority, and validity such liens were entitled to as of the Petition Date and under federal law.

Additionally:

(i)     The debt owed by the Debtor to the Internal Revenue Service is a nondischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if the Debtor should default, the Internal Revenue Service is not subject to the provisions of the Bankruptcy Code so that the Internal Revenue Service can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case.   The liens continue to be enforceable against all of the Debtor's property under federal law.

(ii)     A failure by the Reorganized Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the fifteenth (15th) day of each month.   If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within fifteen (15) days of the date of the demand letter.   The Debtor can receive up to three (3) notices of default from the Internal Revenue Service; however, on the third (3rd) notice of default from the Internal Revenue Service, the third (3rd) notice of default cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.   These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority, unsecured general and administrative priority.

(iii)     The Internal Revenue Service is bound by the provisions of the confirmed Plan and is barred under Section 1141 of the Bankruptcy Code from taking any collection actions against the Reorganized Debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the Internal Revenue Service).   The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

(iv)     The Debtor's or Reorganized Debtor's failure to remain current on its ongoing tax obligations shall be an event of default under the terms of the Plan.  The Debtor is required to stay current on all ongoing tax reporting/tax payments with the Internal Revenue Service.  If the debtor defaults to the Internal Revenue Service (in the timely filing of any future tax return and/or the payment of any ongoing tax liability) this is an event of default to the plan term agreement.  The Internal Revenue Service must send written demand to the  Debtor or Reorganized Debtor of the default and the Debtor must cure the default within fifteen (15) days of the date on the demand letter.  If the default is not cured within fifteen (15) days, the Internal Revenue Service may assert the balance on the proof of claim still remaining which will include tax, interest and penalty to be due and owing and the entire balance (after crediting all payments made) may go out for collection.

(v)     Internal Revenue Service remedies upon default:  Upon any final and non-curable default by the Reorganized Debtor, the Internal Revenue Service may accelerate its allowed pre- and post-petition claims (and any future administrative claims), and declare the outstanding amounts of such claims to be immediately due and owing.  The Internal Revenue Service may pursue any and all available state and federal rights and remedies as provided by law without further order of this Court.

(vi)   The Internal Revenue Service agrees to withhold collections against the responsible officers of the Debtor for pre-petition trust fund assessments during the duration of the plan (provided there is no default as to the Internal Revenue Service).  The period of limitations on collections against the responsible officers remain suspended  under 26 U.S.C. 6503(h) for the tax periods being paid under the plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

<u>Class 7:</u>   The nonpriority unsecured class of creditors consists of $525,857.97 owed to thirty-seven (37) different creditors as described below:

| Name of Unsecured Creditor | Amount Owed | Basis for Debt | Pro-Rata % | Monthly Payment |
|---|---|---|---|---|
| AFP Alarm & Detection | $368.00 | Services performed | .06 | $0.52 |
| Atlas, Hall & Rodriguez, LLC | $3,271.16 | Services performed | .62 | $5.43 |
| Available Plastics, Inc.          [CLAIM 8] | $6,785.53 | Goods sold | 1.29 | $12.30 |
| Averitt Express          [CLAIM 6] | $477.65 | Services performed | .09 | $0.78 |
| Bank of America          [Account 0420] | $6,989.00 | Credit Card (Charles Graham) | 1.32 | $12.56 |
| Bank of America          [Account 6802] | $8,556.00 | Credit Card (Charles Graham) | 1.62 | $14.51 |
| BlueVine Capital, Inc. | $6,453.00 | Money Loaned | 1.22 | $10.69 |
| Bruin Plastics Company, Inc.[Account 4500] | $14,245.00 | Good sold | 2.70 | $23.66 |
| C&S Plastics | $13,678.00 | Goods sold | 2.60 | $22.78 |
| CityBank, N.A.          [Account 3174] | $4,109.00 | Credit Card (Charles Graham) | .78 | $6.83 |
| CityBank, N.A.          [Account 8490] | $22,281.00 | Credit Card (Charles Graham) | 4.23 | $37.07 |
| Custom Engineered Wheels, Inc. | $803.00 | Goods sold | .15 | $1.31 |
| FASNAP Corp. | $1,068.00 | Goods sold | .30 | $2.62 |
| FedEx Corporate Services Inc.   [CLAIM 12] | $26,522.89 | Services performed | 5.04 | $44.17 |
| Home Depot          [Account 9011] | $1,659.00 | Credit Card | .31 | $2.71 |
| IBM Corporation | $788.00 | Services performed | .14 | $1.22 |
| Industrial Plastics Products, Inc. | $12,169.00 | Goods sold | 2.31 | $20.24 |
| JED Pool Tools, Inc. | $266.00 | Good sold | .05 | $0.43 |
| JP Morgan Chase Bank   [Account 2640] | $116.00 | Credit Card (Charles Graham) | .02 | $0.17 |
| JP Morgan Chase Bank   [Account 1850] | $22,874.00 | Credit Card (Charles Graham) | 4.34 | $38.03 |
| JP Morgan Chase Bank   [Account 8169] | $18,314.00 | Credit Card (Charles Graham) | 3.48 | $30.50 |
| JP Morgan Chase Bank   [Account 4401] | $27,803.00 | Credit Card (Charles Graham) | 5.28 | $46.27 |

| | | | | |
|---|---|---|---|---|
| Kabbage, Inc. | $11,759.00 | Money loaned | **2.23** | **$19.54** |
| Laird Plastics      [Account 1960] | $8,440.00 | Goods sold | **1.60** | **$14.02** |
| Mid-Valley Bolt & Supply | $855.00 | Goods sold | **.16** | **$1.40** |
| Neopost USA | $758.00 | Services performed | **.14** | **$1.22** |
| QuarterSpot, Inc.      [CLAIM 11] | $101,917.60 | Money loaned | **19.38** | **$169.85** |
| R&L Carriers, Inc.      [Claim 9] | $9,647.38 | Services performed | **1.83** | **$16.03** |
| R.D. Bussard & Son, Inc. | $1,195.00 | Goods sold | **.22** | **$1.92** |
| Roser Customs Service | $210.00 | Services performed | **.03** | **$0.26** |
| Sam's Club Credit Card      [Account 5248] | $15,791.00 | Credit card (Charles Graham) | **3.0** | **$26.29** |
| Travelers Insurance | $3,192.00 | | **.60** | **$5.25** |
| U.S. Department of Labor | $61,824.00 | OSHA penalties | **11.75** | **$102.98** |
| United Parcel Service | $30.14 | Services performed | **.01** | **$0.08** |
| Valero      [Account 2770] | $563.00 | Credit Card (Charles Graham) | **.10** | **$0.87** |
| Wells Fargo Bank, N.A.      [Claim 10] | $103,951.62 | Money Loaned | **19.76** | **$173.18** |
| Yves Andres S.A, De C.V. | $6,138.00 | Goods sold | **1.00** | **$8.76** |
| **Total Owed:** | **$525,867.97** | **10% dividend: $52,586.80** | **100%** | **$876.45** |

Treatment:   Holders of General Unsecured Claims will receive a ten (10%) dividend (more or less) on their allowed claims in equal monthly installments at 0% interest.  Specifically Debtor shall  remit a monthly total payment of $876.45, to be distributed pro-rata to each of the Holders of General Unsecured Claims, for a period of 60 months.  Interest will not accrue on the amounts owed to this class of creditor. Payments shall begin on the Effective Date and shall be due on the 1st day of each month, thereafter.  If the monthly pro-rata payment is less than $25.00, Debtor will pay the unsecured creditor three (3) months' payments on a quarterly basis.  These claims are impaired.

In the event the Property is sold prior to the payment of this class of claims through the confirmed Plan, the balance owed on the $52,586.80 dividend for this class of claims will be paid with any available funds, after payment of closing costs and applicable secured lienholders, from the sales proceeds of the Property at the time of closing.

<u>Class 8:</u>      Insider debts.  This Class consists of $299,367.45 in loans made to the Debtor by insiders as follows: (i) Charles Graham and Linda Graham in the amount of $128,980.00; (ii) Linda Graham in the amount of $31,887.45; and (iii) Mary Jo Tansel in the amount of $138,500.00.

<u>Treatment:</u>      These insiders shall not receive any payments for these Class 8 Claims or distributions under the Plan.

<u>Class 9:</u>      Equity Interests.  This Class consists of the equity interest held in the Debtor by Charles L. Graham (100% ownership).

<u>Treatment:</u>      The shareholder will retain his interest in the Debtor.  Holder of Equity Interest in the Debtor shall retain his interest, but shall not receive any payments or distributions on account of that interest until all senior classes are paid in full.

## C.  Treatment of Claims

| Class | Name of Creditor / Classification of Claim | Amount Claimed | Years Amortized | Payment (Amount and Frequency) | Interest Rate |
|---|---|---|---|---|---|
| 1 | Trustee Fee<br>*Administrative Claim* | n/a | n/a | n/a | n/a |
| 2 | Attorney's fees & expenses of JS Whitworth<br>*Administrative Claim* | $30,000.00 | | Upon approval of the Court, these attorney's fees and costs will be paid within 30-days of confirmation of this Plan | 0% |
| 3 | Taxing Entities  -  [CLAIM 5] (2018) (2019 is available)<br>*Secured Tax Claim Impaired* | (2018 only) $14,041.59 | 4.5  years | $337.79 monthly for 54 months OR until Property is sold when amount owed will be paid in full at closing. | 12% |
| 4a | Rio Bank - [Claim 1]<br>Promissory Note - Secured by Real Property<br>*Secured Claim - Impaired* | $318,096.89 | 5  years 20-amortiz | Class 4a, Class 4b and Class 4c for a debt of approximately $478,000.00 will be paid over 5-year balloon: $3,556.38 for 59 months with $411,816.47 balloon payment on month 60 OR the debt is paid in full upon sale of the Property | 6.5% |
| 4b | Rio Bank - [Claim 2]<br>Promissory Note - Secured by Real Property<br>*Secured Claim - Impaired* | $92,267.36 | | | |
| 4c | Rio Bank - [Claim 3]<br>Promissory Note - Secured by Real Property<br>*Secured Claim - Impaired* | $50,326.97 | | | |
| 4d | Rio Bank - [Claim 4]<br>Promissory Note - Secured by Real Property<br>*Secured Claim - Impaired* | $10,005.29 | | Class 4d will be paid in full within 45-days of confirmation | |
| 5 | Internal Revenue Service - [CLAIM 7]<br>*Unsecured Priority Tax Claim Impaired* | $838.54 | 2 years | $36.79  monthly for 24  months | 5% |
| 6 | Internal Revenue Service<br>*Unsecured Non-Priority Impaired* | $234.67 | | $234.67 will be paid in full within 45-days of confirmation | |
| 7 | General Unsecured Creditors<br>*Unsecured Non-Priority Impaired* | $525,857.97 10% dividend to be paid pro-rata<br><br>$52,586.80 | 5  years | $876.54 monthly for 60 months to be distributed pro rata OR the balance of $52,586.80 paid pro-rata from the funds available after payment of closing costs and secured liens upon closing of the sale of the Property | 0% |
| 8 | Insiders: Charles L. Graham, Linda Graham & Mary Jo Tansel | $299,367.45 | | No payments to insiders. | |
| 10 | Equity Interest Holder-Charles L. Graham | | | Interest in Debtor will be maintained. | |
| **Total Monthly Plan Payment:** | | | | | **$4,807.50** |

### D.  Feasibility of the Plan

This plan is feasible as set out below. Specifically, Debtor's projected average net monthly income, is $4,845.00.  This monthly income is sufficient to pay the projected Plan Payment of $4,807.50.
The current monthly income is described as follows:

| Description of Source of Income | Monthly Income | Monthly Expenses | Totals |
|---|---|---|---|
| Monthly Rent on Property | $7,000.00 | | $7,000.00 |
| Monthly cost for property insurance | | $620.00 | |
| Monthly escrow for property taxes | | $750.00 | |
| Monthly premium for life insurance policy | | $785.00 | |
| | | | $2,155.00 |
| Total Income available for Plan Payment: | | | $4,845.00 |
| | | | |
| **Average Monthly Net Profit** | | **$4,845.00** | |
| **Projected Monthly Plan Payment:** | | **$4,807.50** | |
| **Overage After Projected Plan Payment:** | | **$37.50** | |

### VIII.  Alternative to the Debtor's Plan – Liquidation Analysis

The only alternative is liquidation.  However, liquidation would not be in the best interest of the estate because there would only be approximately $27,000.00 available for distribution after all of the secured creditors were paid the amounts owed and secured by their liens.  Specifically, Debtor would not be able to maximize the value of the estate under liquidation.

Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the Plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the Debtor's assets.

As set forth above, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest.  This treatment satisfies the liquidation test under §1129(a)(7)(A). Holders of priority claims are paid in full, with interest.  This also satisfies the requirements of §1129(a)(7).

The Debtor has estimated that its assets, after payment of liens, would generate the following amounts in a chapter 7 liquidation:

## LIQUIDATION ANALYSIS (UNAUDITED)

| DESCRIPTION AND CATEGORY OF ASSETS | FAIR MARKET VALUE | AMOUNT SECURED LIEN(S) | AD VALOREM TAXES OWED | VALUE FOR ESTATE (after liens paid) | LIQUIDATION VALUE (after payment of liens) |
|---|---|---|---|---|---|
| **Real Property (Manufacturing Facility)** | $700,000.00 | $478,000.00 | $22,000.00 | $200,000.00 | **-$14,000.00[1]** |
| **Office Furniture & Office Equipment** | $11,110.00 | | | | **$4,999.50[2]** |
| **Machinery, Equipment & Tools of the Trade** | $27,930.00 | | | | **$12,568.50[3]** |
| **Accounts Receivable** | $0.00 | | | | **$0.00** |
| **Cash** | $25,000.00 | | | | **$25,000.00** |
| **TOTAL VALUE OF ASSETS:** | **$764,040.000** | | | | |
| **TOTAL LIENS SECURED:** | | **$478,000.00** | **$22,000.00** | | |
| **TOTAL VALUE AFTER LIENS:** | | | | **$264,040.00** | |
| **TOTAL LIQUIDATION VALUE (after payment of liens)** | | | | | **$28,568.00** |
| **Total IRS Unsecured Debt** | | | | **$1,073.21** | |
| **Net Liquidation Value after payment to IRS:** | | | | | **$27,494.79** |

## IX.  Risks to Creditors under the Debtor's Plan

There is always a chance that a plan may not succeed, but Debtor feels confident that the current tenant will either purchase the Property, as agreed in the current lease agreement, or enter into a long term lease that will make the Property more marketable as an income-producing property.  Either alternative, the continued lease and eventual sale of the Property, provides sufficient income to pay the Plan Payments.

---

[1]   This amount is based  upon a 75% foreclosure bid price less (i) Rio Bank's lien, (ii) ad valorem taxes owed, (iii) attorney fees, (iv) holding costs, (v) repairs required for resale, (vi) marketing and realtor commission, and (vii) other costs incurred in relation to the liquidation of this real property.
[2]   This amount is based upon a 45% liquidation rate of recovery on these items of personal property.
[3]  This amount is based upon a 45% liquidation rate of recovery on these items of personal property.

## X.  Payment – Prepayment

Any claim may be prepaid at any time, without penalty.  Interest as provided in this Plan must be paid through the date of the prepayment.  Distribution under the Plan shall commence on the first of the month, following on full month after the Effective Date.  Effective Date shall mean fifteen (15) days following entry of the Confirmation Order.

## XI.  Tax Issues

The federal income tax effects on holders of claims will vary depending on how the holder has treated its claim for tax purposes.  For example, if the holder has a basis in its debt claim and is paid an amount less than its basis, the holder may be entitled to a federal income tax deduction for its loss.  This will depend on the holder's own tax characteristics and cannot be assured.  Conversely, if the holder has no basis in its debt claim, the holder may recognize income for federal income tax purposes based on payments under the Plan.

Because each holder's federal income tax situation may vary, you are urged to consult your own tax advisors to determine the federal income tax effect of the Plan on you.

The Debtor may also have a federal income tax effect from the Plan.  To the extent that indebtedness is discharged, the Debtor may have a basis adjustment on its assets.  Moreover, any sale of assets may produce taxable income.   No opinion regarding the income tax ramifications of this Plan is provided to any party-in-interest or Creditor.

## XII.  Executory Contracts and Leases

### A.  Rejected Executory Contracts and Leases

The executory contracts and lease listed below are rejected as of the Effective Date, unless another termination date is designated by an order of the Court.  Proofs of claim for damages arising from the rejection of an executor lease or contract must be filed no later than 30 days after the Effective Date. Claims filed after that date will not be paid.

| Contracting Party | Description of Contract | Amount Required to Cure any Default |
|---|---|---|
| n/a | | |

 The amount shown under "Amount Required to Cure Any Default" will be paid not later than 30 days after the Effective Date of the Plan.

If the rejection of an Executory contract or unexpired lease pursuant to this Article gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified as a Class 13 General Unsecured Claim; provided however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against the Debtor, Debtor, its successors or properties, unless a proof of Claim is filed and served on the Debtor within 30 days after the date of the notice of entry of an order of the Bankruptcy Court authorizing rejection of the Executory contract or unexpired lease, which order may be the Confirmation Order.

### B. Assumed Executory Contracts and Leases

The executory contracts and leases listed below are assumed by the Debtor:

| Tenant | Dates of Lease Term | Address of Leasehold | Terms of Payment |
|---|---|---|---|
| CCMM, Inc.<br>Attn: Robert McCullah<br>107 Rio Grande Drive<br>Mission, Texas 78572 | 01/01/2019 to 12/31/2019<br><br>12 months | 10701 N. Ware Road<br>McAllen, Texas 78504<br><br>2-Office/Warehouses<br>All racking/equipment | $7,000.00 Monthly<br><br>Purchase/First Right of Refusal for $740,000 purchase price |

| Service Provider | Date of Contract | Services/Purpose of Contract | Terms |
|---|---|---|---|
| Blake Box, Realtor<br>Jerry Box, Realtro<br>Aztec Realty & Investments, LLC<br>500 E. Pecan Boulevard<br>McAllen, Texas 78501 | 02/01/2018 to 12/31/2019 | Realtor services to lease and market the Property. | Realtor will receive 5% of sales price. Realtor is to receive 5% of monthly rent as commission. |

If you are the Contracting Party on an assumed contract and disagree with the cure amounts shown you must file an objection prior to the objection deadline. If you do not file an objection prior to the objection deadline, the Court may confirm the Plan and you will be bound by the terms of the confirmed Plan as to the cure amount.

### XIII. Claims Objections

Claims objections must be filed not later than 30 days after entry of the order confirming the Plan. This deadline may be extended by the Court, on motion by a party in interest. Any such motion must be filed not later than 30 days after entry of the order confirming the Plan.

## XIVI.  Effect of Confirmation of Plan

### A.  Discharge, Vesting, and Effective Date

Confirmation of the Plan shall discharge and fully satisfy, pursuant to and so provided by 11 U.S.C. §1141(d) of the Bankruptcy Code, and as provided contractually pursuant to the terms of the Plan, all Debts, liabilities, and obligations of the Debtor (including all penalties, fines or forfeitures, and damages) that arose before the Confirmation Date, except as otherwise specifically provided in the Plan or the Order Confirming Plan, whether or not such Claim is Allowed or paid pursuant to this Plan.  Upon Confirmation, the Plan shall Discharge all Debts (as defined in 11 U.S.C. §101) and all Claims against, and liabilities of, the Debtor which are Dischargeable by Debtor in a case under 11 U.S.C. §101. et seq. by statute or by law applicable to Title 11, U.S.C., and in a Chapter 11 Case, or by contract with a Creditor.  All Creditors and Persons will continue to be stayed and enjoined from proceeding against the Debtor and its assets pursuant to 11 U.S.C. §524.

**IT IS THE INTENTION OF THIS PLAN THAT ONCE CONFIRMATION OCCURS, THE DEBTOR WILL BE FULLY, FINALLY, AND COMPLETELY DISCHARGED FROM ALL LIABILITIES INCLUDING CLAIMS AND DEBTS AND SHALL BE RE-VESTED WITH ALL PROPERTY OF THE ESTATE AS HEREIN PROVIDED.**

Upon Confirmation, title to all exempt assets of the Debtor shall be retained by and re-vested in the Debtor, free and clear of all claims, liens, security and equitable interests, except as specifically set forth in this Plan.  The Order Confirming Plan shall be a judicial determination of and a contract for, the discharge of the liabilities of and Claims against the Debtor.

The Effective Date of this Plan is the fifteenth (15th) day after entry of the order confirming  the Plan, unless the confirmation order is stayed.  If the confirmation order is stayed, the Effective Date shall be the 15th day following the termination of the stay.  No party may act pursuant to this Plan prior to the Effective Date.

### B.  Obligations to the United States Trustee

The Debtor will be responsible for timely payments of the United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6).  Any fees due as of the date of confirmation will be paid on the Effective Date.  After confirmation, the Debtor will continue to file timely financial reports in the format required by the United States Trustee and continue to pay quarterly fees as accrued until the case is closed, converted to a case under chapter 7, or dismissed.

### XV.  Releases and Alteration of Rights of and With Respect to Third Parties

Release of Liens, Claims and Causes of Action:   All creditors of the Debtor receiving payment or distributions pursuant to the Plan in consideration for the promises and obligations of the Debtor under the Plan shall be deemed to have waived, released, and discharged all rights or claims which they had or might have had against the Debtor.

Allowed Secured Claims: The lien securing any Allowed Secured Claim shall be deemed to be released and discharged in its entirety when the Allowed secured Claim secured by such lien has been paid in full in accordance with the provisions of this Plan, and as may be limited by the provisions of this Plan.  Upon such payment in full, the holder of such Allowed Secured Claims shall execute and deliver such instruments as may be reasonably requested by the Debtor or the Re-vested Debtor, in order to reflect such release and discharge on the appropriate land or public filing records.

Release of Judgment Liens: the Order confirming the Plan shall constitute a release and discharge of all judgment liens against any property, creditor asset, or asset of the Debtor or the Bankruptcy Estate.  A certified copy of the confirmation Order, shall constitute a release of any such judgment lien, or, at its sole discretion, the Debtor may demand and obtain from any judgment lien holder, at the cost of expense of the Debtor, a release of such judgment lien in recordable form. If after a reasonable request is made, any creditor who refuses or fails to execute said release, all costs (attorney's fees, filing fees, etc.) to enforce this process shall be borne by the creditor who refused.

Guarantees; Indemnities; Notes; Bonds; Etc.: All Claims and causes of action based upon guarantees of collection, payment or performance, indemnity or performance bonds, promissory notes, or other similar undertakings made or given by the Debtor as to the obligations or performance of another or of any other person shall be discharged, released and no further force and effect, except as otherwise provided in this Plan.

Release Upon Payment and Discharge:  All consideration and payments provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, Debts and liabilities of any nature whatsoever against the Debtor or any of their assets or properties effective on the Effective Date.  Except as may be otherwise provided herein, at the Confirmation Date all Claims against the Debtor shall be satisfied, Discharged, and released in full; and all claimants, holders of Claims and all Creditors shall be precluded from asserting against the Debtor, its assets, properties, or interests held by it, any Claim or future Claim based upon any transaction arising on or prior to the Confirmation Date.

Releases: All creditors of the Debtor receiving payment or distributions pursuant to the Plan, in consideration for the premises and obligations of the Debtor under the Plan, shall be deemed to have waived, released, and Discharged all rights or Claims which they had or might have had against the

Debtor, except those expressly set out herein, unless otherwise ordered by this Court in the Confirmation Order.

Exculpations: The fullest permissible under all applicable law, the Debtor and Reorganized Debtor and its current shareholders, officers, directors, members, managers, agents, representatives for same shall neither have nor incur any liability to any entity including, specifically any holder of a Claim or Interest for any act taken or admitted to be taken in connection with or related to the prosecution of this Chapter 11 Case, the formulation, preparation, dissemination, implementation, Confirmation or consummation of any Plan, any Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Chapter 11 Case, any settlement agreement, purchase offer (whether accepted or rejected), any Plan, any Disclosure Statement, or the Confirmation Order, including Solicitation or acceptance of any Plan.

Third-Parties: Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, each Holder of a Class who (i) has voted to accept this Plan or abstained from voting and (ii) has not opted out from the release provided herein shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims asserted against Debtor's Representatives and its shareholders for conducting business on behalf of Debtor, whether such claims are known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity or claimant would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, Debtor's shareholders, the Debtor's pre-petition and post-petition purchase, sale, or rescission of the purchase or sale of any asset of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any released party, the negotiation, formulation or preparation of the Plan and Disclosure Statement or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date.

## XVI. Default

Unless stated elsewhere provided in this Plan, if there is a default in payment to a creditor under this Plan, the default must be cured within 20 days of written notice sent to the Debtor by the affected creditor.  If the default is not cured within the 20-day period, the creditor may seek any rights available under the Bankruptcy Code or under applicable non-bankruptcy law.

## XVII.  Injunction

Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against the Debtor, the Estate, properties of the Estate or proceeds of said property are, with respect to any such claims, specifically permanently enjoined and restrained from commencing, conducting or continuing any action or proceeding against the Debtor upon such Claims, including, but not limited to: (i) commencing, conducting or continuing in any  manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation) any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons based upon such Claims; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decreed or order against the Debtor, the Estate properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate, properties of the Estate or proceeds of said property or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons;  (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, the foregoing Persons; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

## XVIII.  Release Upon Payment and Discharge

  All consideration and payments provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, Debts, and liabilities of any nature whatsoever against the Debtor or any of its assets or properties effective on the Effective Date.  Except as may otherwise provided herein, at the Discharge Date all Claims against the Debtor shall be satisfied, Discharged, and released in full; and all claimants, holders of Claims and all Creditors shall be precluded from asserting against the Debtor, its assets, properties, or interests held by it, any Claim or future Claim based upon any transaction arising on or prior to the Confirmation Date.

## XIX.  Effect of Discharge Order

Upon entry of a Discharge Order, all creditors of the Debtor receiving payment or distributions pursuant to the Plan, in consideration for the promises and obligations of the Debtor under the Plan, shall be deemed to have waived, released, and Discharged all rights or Claims which they had or might have had against

the Debtor, except those expressly set out herein, unless otherwise ordered by this Court in the Discharge Order.

## XX.  Exculpations

To the fullest extent permissible under all applicable law, the Debtor and its current shareholder, officers, directors, members, managers, agents, representatives, if any, for same shall neither have nor incur any liability to any entity including, specifically, any holder of a Claim or Interest for any act taken or admitted to be taken in connection with or related to the prosecution of this Chapter 11 Case, the formulation, preparation, dissemination, implementation, Confirmation or consummation of any Plan, any Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Chapter 11 Case, any settlement agreement, purchase offer (whether accepted or rejected), any Plan, any Disclosure Statement, or the Confirmation Order, including solicitation of acceptance of the Plan.  No portion of such exculpation shall apply to any officer, director, or employee of the Debtor or their representatives, that held any such position prior to date of the order for relief.

## XXI.  Subordinated Claims

Creditors whose Claims are subordinated: (i) in accordance with 11 U.S.C. §510 or 11 U.S.C. §1129(b) by Final Order; or (ii) pursuant to this Plan consists of claims or interest which have been excluded from participation in the distributions to be made to holders of Class 8 unsecured claims because they are Insiders as that term is defined by the Bankruptcy Code.  Likewise, Class 9 consists of Charles L. Graham (100% ownership), an insider who will  not receive or participate in any distributions under the Plan.  These Class 8 and Class 9 claims will not receive dividends or distributions from the Debtor until the claims of all Creditors that are subject to this Plan who are of a higher priority are satisfied in full pursuant to the terms of the Plan, except to the extent property management or similar fees are specified by the Plan.

## XXII.  Jurisdiction of the Court

Without limiting the effect of Article 11.01 the Bankruptcy Court shall retain jurisdiction after Confirmation to:

(a) modify the Plan after entry of the Confirmation Order, pursuant to the provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules;

(b) correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modification in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(c) hear or determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(d) hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, and to enforce, including by specific performance, the provisions of the Plan;

(e) hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of any settlement agreements entered into by the Debtor during the Case;

(f) enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

(g) assure the performance of the Debtor of its obligations to make distributions under the Plan;

(h) enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor, Debtor, or the Plan;

(i) hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

(j) ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(k) hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of Section 157 of Title 28 of the United States Code;

(l) enter an implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(m) hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor and/or Debtor arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Case;

(n) hear and determine all applications for the employment or compensation of Professional Persons and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code or the Plan;

(o) recover all assets of the Debtor and Property of the Estates wherever located, including actions under chapter 5 of the Bankruptcy Code;

(p) hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of Executory contracts or unexpired leases and the allowance of any Claim resulting there from;

(q) hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r) consider and act on the compromise and settlement of any Claim against, or Interest in the Debtor, including without limitation, any disputes relating to any Administrative Claims, any Bar Date, or Bar Date Order;

(s) hear and determine all questions and disputes regarding title to the assets of any of the Debtor and its respective Estate;

(t) hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Case; and

(u) enter such orders as are necessary to implement and enforce any injunctions provide for in the Plan and Confirmation Order.

## XXIII. DEBTOR'S REQUEST FOR APPROVAL

WHEREFORE, the Debtor submits this Disclosure Statement and Plan, in good faith, in accordance with the provisions of Title 11, U.S.C. §101, *et seq.* and §1125 for approval of the Court at the Disclosure Statement Hearing, and for consideration by Creditors and other Parties-in-interest with respect to voting on the proposed Plan, and as the sole source of information furnished by the Debtor, or to be furnished by the Debtor, in solicitation of acceptance of the Debtor's Plan.

SIGNED on the 5th day of June 2019.

Respectfully submitted,

CARE PRODUCTS, INC.

By: _____
      Charles L. Graham, President

JS WHITWORTH LAW FIRM, PLLC
P.O Box 2831
McAllen, Texas 78504
(956) 371-1933 - Telephone
(956)265-1753 - Fax
Email: jana@jswhitworthlaw.com

By: ___/s/___Jana Smith Whitworth
      Jana Smith Whitworth
      SBOT 00797453
      Federal ID: 20656

ATTORNEY FOR DEBTOR-IN-POSSESSION

**CERTIFICATE OF SERVICE**

     I hereby certify that a copy of the Debtor's Combined Chapter 11 Disclosure Statement and Plan of Reorganization was served on June 5, 2019, on all parties and counsel of record, in the manner indicated below:

                    /s/   Jana Smith Whitworth

U.S. TRUSTEE:
***Via Email and ECF***
Stephen Statham
606 N. Carancahua, Ste. 1107
Corpus Christi, Texas 78401
Email: stephen.statham@usdoj.gov

CREDITORS:
***Via Email and ECF***
Diane W. Sanders
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 17428
Austin, Texas 78760
Email: austinbankruptcy@publicans.com
Attorney for Hidalgo County

***Via Email and ECF***
Kurt Stephen
Law Office of Kurt Stephen, PLLC
100 South Bicentennial Boulevard
McAllen, Texas 78501
Email: kurtstep@swbell.net
Attorney for Linda Graham

***Via E-Fax (888) 853-3232 and Email***
Catherine Nelson
Internal Revenue Service
300 E. 8th Street, MS 5026AUS
Austin, Texas 78701

***Via U.S.P.S. - First Class Mail***
AFP Alarm & Detection
2003 Mykawa Road
Pearland, TX 77581

***Via U.S.P.S. - First Class Mail***
Available Plastics, Inc.
5020 Beechmont Drive
Huntsville, AL 35811

DEBTOR:
***Via Email***
Care Products, Inc.
Attn: Charles L. Graham, President
10701 N. Ware Road
McAllen, TX 78504
Email: Charliecpi@aol.com

***Via Email and ECF***
Scott Walsh
Walsh McGurk Cordova Nixon, PLLC
4900 N. 10th St.
McAllen, TX 78504
Email: swalsh@wmcnlaw.com
Attorney for Rio Bank

***Via Email and ECF***
Thomas J. Kokolis
Parker, Simon & Kokolis, LLC
110 N. Washington Street, Suite 500
Rockville, MD 20850
Email: tkokolis@pskfirm.com
Attorney for Quarterspot, Inc.

***Via U.S.P.S. - First Class Mail***
Atlas, Hall & Rodriguez, LLC
P.O. Box 3725
McAllen, Texas 78502-3725

***Via U.S.P.S. - First Class Mail***
Averitt Express
P.O. Box 3166
Cookeville, TN 38502

***Via U.S.P.S. - First Class Mail***
BlueVine Capital, Inc.
401 Warren Street, Suite 300
Redwood City, CA 94063

*Via U.S.P.S. - First Class Mail*
Bank of America
P.O. Box 982234
El Paso, TX  79998-2234

*Via U.S.P.S. - First Class Mail*
Bruin Plastics Company, Inc.
P.O. Box 700
Glendale, RI  02826

*Via U.S.P.S. - First Class Mail*
CityBank, N.A.
Attn: Credit Card Department
P.O. Box 6077
Sioux Falls, SD  57117-6077

*Via U.S.P.S. - First Class Mail*
FedEx Corporate Services Inc.
3965 Airways Blvd., Module G, 3rd Floor
Memphis, TN  38116-5017

*Via U.S.P.S. - First Class Mail*
Home Depot
P.O. Box 790328
St. Louis, MO  63179

*Via U.S.P.S. - First Class Mail*
Industrial Plastics Products, Inc.
6012 33rd Street East
Bradenton, FL  34203

*Via U.S.P.S. - First Class Mail*
Kabbage, Inc.
P.O. Box 77081
Atlanta, GA  30357

*Via U.S.P.S. - First Class Mail*
Laird Plastics
4646 Perrin Creek, Suite 220
San Antonio, TX  78217

*Via U.S.P.S. - First Class Mail*
C&S Plastics
1635 7th Street SW
Winter Haven, FL  33880

*Via U.S.P.S. - First Class Mail*
Custom Engineered Wheels, Inc.
309 Robert M. Coggins Jr. Drive
Baldwyn, MS  38824

*Via U.S.P.S. - First Class Mail*
FASNAP Corp.
P.O. Box 1613
Elkhart, IN  46515

*Via U.S.P.S. - First Class Mail*
IBM Corporation
3039 E. Cornwallis Road
Research Tri Park, NC  27709

*Via U.S.P.S. - First Class Mail*
JED Pool Tools, Inc.
1100 Penn Avenue
Scranton, PA  18509

*Via U.S.P.S. - First Class Mail*
JP Morgan Chase Bank
Attn: Business Card Services
P.O. Box 15298
Wilmington, DE  19850-5298

*Via U.S.P.S. - First Class Mail*
Mid-Valley Bolt & Supply
1605 Oaks Road
Edinburg, TX  78539

*Via U.S.P.S. - First Class Mail*
R.D. Bussard & Son, Inc.
P.O. Box 206
Albany, OR  97321

*Via U.S.P.S. - First Class Mail*
Neopost USA
478 Wheelers Farm Road
Milford, CT  06461

*Via U.S.P.S. - First Class Mail*
R&L Carriers, Inc.
Attn: Tina Runyon
600 Gillam Road
Wilmington, OH  45177

*Via U.S.P.S. - First Class Mail*
Roser Customs Service
400 East 13th Street
Brownsville, Texas  78520

*Via U.S.P.S. - First Class Mail*
Travelers Insurance
Direct Billing Operations
P.O. Box 26208
Richmond, VA  23260-6208

*Via U.S.P.S. - First Class Mail*
United Parcel Service
P.O. Box 7247-0244
Philadelphia, PA  19170

*Via U.S.P.S. - First Class Mail*
Wells Fargo Bank, N.A.
Wells Fargo Bank Small Business Lending
P.O. Box 29482 MAC S4101-08C
Phoenix, AZ  85038

*Via U.S.P.S. - First Class Mail*
Sam's Club Credit Card
P.O. Box 965004
Orlando, FL  32896-5004

*Via U.S.P.S. - First Class Mail*
U.S. Department of Labor
Occupational Safety & Health Admin
606 N. Carancahua, Suite 700
Corpus Christi, TX  78401

*Via U.S.P.S. - First Class Mail*
Valero
Attn: Credit Card Department
P.O. Box 631
Amarillo, TX 79105-0631

*Via U.S.P.S. - First Class Mail*
Yves Andres S.A, De C.V.
1700 E. 23rd Road
Mission, Texas  78572